UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PHILOMINA P. LUKOSE,

        Plaintiff,

  v.                **DECISION AND ORDER**
                             09-CV-962S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

  1.  Plaintiff Philomina Lukose challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since June 19, 2007, due to depression, anxiety, panic attacks with chest tightness, memory/concentration problems, and knee pain. Plaintiff contends that her impairments have rendered her unable to work. She therefore asserts that she is entitled to disability benefits under the Act.

  2.  On October 19, 2007, Plaintiff filed a Title II application for disability insurance benefits. Her application was initially denied on March 3, 2008, and upon reconsideration on August 25, 2008. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ D. Kevin Dugan on February 10, 2009, at which Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on May 8, 2009, denied Plaintiff's application for benefits. On September 14, 2009, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on November 6, 2009, challenging Defendant's final decision.[1]

---

[1] The ALJ's May 8, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

3.	On April 21, 2010, the Government filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On April 22, 2010, Plaintiff filed a Cross-Motion for Judgment on the Pleadings pursuant to Rule 12(c). The Government and Plaintiff filed responses on May 13, 2010. This Court took the motions under advisement without oral argument.

4.	A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.	"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support

the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

3

see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 19);[2] (2) Plaintiff's major depressive disorder with anxiety and knee pain are "severe" impairments within the meaning of the Act (Id.); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (Id.); (4) Plaintiff has retained the residual functional capacity to perform the exertional demands of a wide range of medium work as defined in 20 C.F.R. 404.1567, with limited exceptions (Id. at 23);[3] and (5) although Plaintiff is unable to perform any past relevant work, the ALJ concluded that given Plaintiff's age, education, work

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The limited exceptions are as follows: Plaintiff is unable to lift and carry more than 50 pounds or more than 25 pounds on a regular basis; Plaintiff can sit for 6 hours in an 8-hour workday and stand/walk 6 hours in an 8-hour day; Plaintiff can never climb ladders/ropes/scaffolds, or work in high exposed places, or around other hazardous conditions; the Plaintiff can remember and carry out short, simple instructions and perform routine, repetitive tasks; the Plaintiff should deal mostly with "things" instead of people and work in a low stress environment. (R. at 23.)

experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (Id. at 26). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision May 8, 2009. (Id.)

10. Plaintiff raises two challenges to the ALJ's decision. First, Plaintiff argues that the ALJ failed to fulfill his duty to develop the record. Second, Plaintiff argues that the ALJ's decision is unsupported by substantial evidence.

11. Plaintiff's first challenge is that the ALJ failed to develop the record by not obtaining clarification of the medical opinions of Doctors Levine, Vassal, Plasencia, Comstock, or from Spectrum Human Services for counseling and treatment records. (Plaintiff's Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings ("Pl.'s Mem."), Docket No. 8, 12-14.) Doctor Levine first treated Plaintiff between April 21, 2006 and October 24, 2007 and assessed Plaintiff as suffering from depression/grief due to the death of her son, as well as anxiety. (R. at 20.) Between August 20, 2007 and December 28, 2007, Plaintiff received treatment from Dr. Robert Vassal, whose notes reflect that Plaintiff described symptoms relating to depression, anxiety, including panic attacks, insomnia, and decreased concentration. (Id.) Between October 22, 2007 and November 29, 2007 Plaintiff received treatment from Dr. Carlos Plasencia who concluded that Plaintiff was unable to work in her past position or in any other position at that time based in part on a Global Assessment of Functioning exam range of 51, denoting moderate difficulty in social, occupational, or school functioning. (Id.) The record only refers to Dr. Gordon Comstock through a note dated January 22, 2009 that stated that Plaintiff suffered from significant depression, with sleep disturbances, and

increased anxiety, and that Plaintiff had been referred to Spectrum Human Services for counseling and treatment, and was unable to work at that time. (Id.) Plaintiff argues that the ALJ had a duty to seek clarification from each of these doctors and request information from Spectrum Human Services for the counseling and treatment records mentioned in Dr. Comstock's note.

12. An ALJ has an obligation to develop the administrative record, including, in certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). The duty to recontact arises only where an ALJ lacks sufficient evidence to evaluate opinion evidence or make a disability determination. Ayers v. Astrue, No. 08-CV-69A, 2009 WL 4571840 (W.D.N.Y. Dec. 7, 2009) (citing Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002) ("The fact that the record does not support the treating physician's opinion does not mean that there are administrative gaps in the record triggering a duty to recontact.")); see also 20 C.F.R. § 404.1512(e) (2010);  29 C.F.R. § 416.912(e) (2010) ("When the evidence we receive from your treating physician or psychologist or other medical source *is inadequate for us to determine whether you are disabled*, we will need additional information to reach a determination or a decision.") (emphasis added); 20 C.F.R. § 404.1527(c)(3) (2010); 20 C.F.R. § 416.927(c)(3) (2010) ("If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if afer weighing the evidence *we decide we cannot reach a conclusion about whether you are disabled*, we will try to obtain additional evidence . . . .") (emphasis added).

13. Here, the ALJ made a limited effort to update Plaintiff's medical information.

At the hearing, the ALJ received Plaintiff's latest prescriptions and inquired whether the record in regards to Plaintiff's medical treatments was up to date. (R. at 37.) The ALJ did not seek further information, in part, because no other information was available. Plaintiff's attorney informed the ALJ that, as to Doctor Comstock, "[t]he treatment is so new that the only records or any information [Plaintiff] could get form [sic] Dr. Comstock was the statement that [Plaintiff] provided to the Court on February 5 dated January 22." (Id.) Doctor Comstock's office could provide nothing more. (Id.)

Additionally, the ALJ did not need to seek additional information from the treating physicians because the record was sufficient for him to make a determination on the Plaintiff's disability. (Id. at 20.) The ALJ gave due consideration to the physicians reports, examinations, and notes, but ultimately gave them "little weight because [they are] inconsistent with the claimant's record as a whole and [was] not documented by medical evidence." (Id. at 20-21.) The ALJ did not find any inadequacy requiring further amplification. The Court agrees that, in light of the small number of meetings Plaintiff had with each physician, as discussed more fully later, the ALJ did not need to further develop the record as to these physicians. Recontacting each of these physicians was therefore not required, and the ALJ did not err.

14. Plaintiff also argues that the ALJ was required to call a vocational expert to develop the record. Plaintiff admits that the Commissioner's ruling addressing nonexertional limitations was, as applied to this case, a recommendation. (Pl.'s Mem. 14.) Plaintiff also relies on Bapp v. Bowen, but that court held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert." 802 F.2d 601, 603 (2d Cir. 1986). Instead, "when a claimant's nonexertional

impairment significantly diminish his ability to work – over and above any incapacity caused solely from exertional limitations – so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert." Id. Here, the ALJ found that "the additional limitations have little or no effect on the occupational base of unskilled medium work." (R. at 26.) Consequently, these limitations do not rise to the level of significance necessitating testimony by a vocational expert, and the ALJ did not err by not calling such an expert to testify.

15.   Plaintiff's second challenge is that the ALJ's decision was unsupported by substantial evidence. (Pl.'s Mem. 15.) Specifically, Plaintiff argues that the ALJ improperly disregarded the treating physician opinions of Doctors Levine, Vassar, Plasenica, and Comstock. The opinions of treating physicians are generally entitled to controlling weight if adequately supported by medically acceptable clinical and laboratory diagnostic techniques and if consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Here, the ALJ did not wholly disregard the physicians' opinions, but neither did he give them controlling authority. Instead, the ALJ gave them "little weight" for being inconsistent with the Plaintiff's own testimony and unsupported by medical evidence. (R. at 20.) It is well-settled that the less consistent an opinion is with the record as a whole, the less weight it is to be given. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). Furthermore, the fact that Plaintiff's physicians may have found her unable to work is not controlling. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). In support of his decision not to give controlling weight to Plaintiff's physicians, the ALJ noted that, although the physicians counseled against Plaintiff returning to work, they also showed that medication was

improving Plaintiff's condition. (R. at 25, 47.) Doctor Plasencia's report also stated that, although Plaintiff showed decreased attention, she also showed "normal orientation, activity, and eye contact; logical thought process, with the absence of hallucinations/delusions or suicidal/homicidal ideas; and intact judgment and insight." (R. at 21.)

The ALJ also found that the physicians' reports conflicted with the Plaintiff's own testimony. See Garcia v. Comm'r of Soc. Sec., No. 05 Civ. 00083(RJS), 2010 WL 907662, at *7 (S.D.N.Y. Mar. 8, 2010) (ALJ had "good reason" not to give substantial weight to treating physician's opinions where opinions were inconsistent with Plaintiff's own testimony). Despite her anxiety and depression, Plaintiff was able to attend church every morning at 5:30am, pay bills, and take care of personal needs, including going out shopping. (R. at 25, 100.) Moreover, Plaintiff was able to visit neighbors and family. (R. at 100.) "To the extent that there are inconsistencies in the evidence, it is the role of the ALJ, and not the Court, to "weigh the conflicting evidence in the record." Garcia, 2010 WL 907662, at *6 (quoting Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998)).

Finally, the Court also notes the amount of time Plaintiff spent with the physicians Plaintiff primary relies on was limited. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (ALJ must consider frequency of treating physician's examination and the length, nature, and extent of the treatment relationship). Here, Plaintiff had only recently started treatment with Doctor Comstock, resulting in a brief three-line letter that constituted the entirety of that physician's comments on Plaintiff's treatment. (R. at 37.) Doctor Plasencia's treatment notes reflect that Plaintiff saw Doctor Plasencia on two occasions. (R. at 154-55.) The brevity of the physicians' relationship with Plaintiff lend further support to the

9

ALJ's decision not to give more weight to Plaintiff's physicians. In light of all this, the Court finds that the ALJ's decision was supported by substantial evidence. Consequently, the ALJ did not err in giving less weight to the opinions of Plaintiff's physicians.

16. Plaintiff also argues that the opinion of the State agency physician is not substantial evidence in support of the hearing decision's as to Plaintiff's mental health. Plaintiff specifically points to the physician's opinion that Plaintiff "may get distracted" and that "timed work may be too stressful." (Pl.'s Mem 16.) These statements do not, however, negate the State agency physician's overall opinion that Plaintiff's ability to concentrate and be attentive are "adequate for a routine setting." (R. at 187.) Nor do they negate the physician's determination that Plaintiff could "follow [a] schedule" and "sustain goal directed activity fairly well." (R. at 187.) The Court finds nothing inconsistent in the physician's opinion that would preclude the ALJ from properly relying on the physician's opinion.

17. Plaintiff further argues, however, that the State agency physician's opinion evidences a need for special accommodations, and that in cases involving such a need, claims should be approved. (Pl.'s Mem. 17.) An ALJ must explicitly consider whether a Plaintiff can work without accommodations. See Silberman v. Astrue, No. 08 Civ. 03398(RMB)(THK), 2009 WL 2902576, at *14 (S.D.N.Y. Aug. 14, 2009). But, the ALJ is not required to find a plaintiff disabled merely because she claims to need an accommodation. Id. (citing Koehler v. Astrue, 283 F. App'x 443, 445 (9th Cir. 2008)). Here, nothing in the record, nor the ALJ's opinion supports the conclusion that Plaintiff required a reasonable accommodation. In fact, the only statement Plaintiff identifies is the State agency physician's comment that "[t]imed work may be too stressful." (R. at 187.)

The Court cannot find that the ALJ was required to interpret this sentence to mean that Plaintiff could not engage in any work without some kind of accommodation. The statement does not describe any specific accommodation nor state with any certainty that one would be required. Therefore the ALJ did not err in giving substantial weight to the State agency physician's opinion.

18. After carefully examining the administrative record, the Court finds that the ALJ sufficiently developed the record. Furthermore, the Court finds that substantial evidence supports the ALJ's decision in this case, including the State agency physician's medical opinions and Plaintiff's testimony. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: October 29, 2011
       Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court